278 So.2d 446 (1973)
Mrs. Marian M. JENKINS, Appellant,
v.
Ernest Lee JENKINS, Appellee.
No. 47082.
Supreme Court of Mississippi.
May 28, 1973.
Rehearing Denied June 18, 1973.
Bacon & Smith, Jackson, for appellant.
Wells, Gerald, Brand, Watters & Cox, Jackson, for appellee.
*447 PATTERSON, Justice:
Mrs. Marian M. Jenkins was granted a divorce from Ernest Lee Jenkins by the Chancery Court of the First Judicial District of Hinds County. The decree included alimony for Mrs. Jenkins' support as well as attorneys' fees. The issues are limited here to the adequacy of the financial awards.
The parties were married in 1946 and lived together for about twenty-four years prior to their separation in 1970. At the time of the marriage the appellee's income was not more than $85 per week, but in later years due to his energy and business acumen the financial resources of the family have greatly increased.
*448 The appellant's activities during the early and frugal period of the marriage, as well as the later and more prosperous time, have been solely those of a housewife. Though she and the appellee have no children, her responsibility included the rearing of a child of the appellee and a child of her own, both by previous marriages. At the time of the trial she was forty-six years of age and without business or professional skills likely to enhance her opportunities for gainful employment. Her assets consisted of a one-half interest in the home, subject to mortgage, and a nominal checking account.
To the contrary, the appellee has substantial assets. He has accumulated, according to his testimony, approximately $800,000 during the period of the marriage. His tax returns for the years 1966 through 1970 reflect his earnings to have been $97,427.36 (1966), $128,874.29 (1967), $130,372.35 (1968), $140,251.00 (1969), and $157,747.00 (1970).
The evidence discloses the appellee to have been a hard-working and generous man during the marriage. He provided the material things necessary for the comforts of the family and as he prospered the family's mode of living was commensurate with his successes. Indeed, the appellee did not at the trial, nor does he now, desire to avoid his responsibility for the appellant's support.
The trial court decreed the following awards to Mrs. Jenkins:
1. The exclusive use of the homestead of the parties, including the furniture, with the appellee required to pay the mortgage payments, taxes, insurance and assessment of property.
2. Appellee to make all necessary repairs to the premises in excess of the sum of $10.
3. That the appellee transfer to the appellant the title to the 1966 Fleetwood Cadillac for her use.
4. The appellant to receive from Mr. Jenkins dividends of every kind and nature on 300 shares of corporate stock of the Jackson Packing Company so long as the appellant remains unmarried.
5. Appellant was awarded alimony in the sum of $1000 per month beginning March 1, 1972, and continuing so long as the appellant remains unmarried.
6. An insurance policy on the life of the appellee was directed to be delivered to the appellant with the right granted her to pay one-half of the premium thereon or the policy should be returned to the appellee.
7. A solicitor's fee of $4500 was allowed to the solicitors for the complainant.
The trial court denied an award of alimony in lump sum and declined to find the appellant to be vested with the title to 300 shares of Jackson Packing Company stock. It directed, however, that the dividends from the stock be paid to the appellant.
The ownership of the stock is a major contention on appeal. According to the records of the Jackson Packing Company, 200 shares of its stock were transferred to Mrs. Jenkins from her husband on March 15, 1969. On April 15, 1969, a certificate for 100 shares was issued to Mrs. Jenkins as a stock dividend. These shares were in a voting trust of the company which expired on December 31, 1969. At this time Stock Certificate #259 was issued to Mrs. Jenkins to replace the three certificates totaling 300 shares. During this period of time the stock was listed in the name of Mrs. Jenkins on the company's records. On March 19, 1970, about the time of the separation, the appellee surrendered Stock Certificate #259 to the company and it was reissued in his name.
The appellant contends that the stock transactions constituted a gift inter vivos and that she is vested with title. The appellee argues that he did not relinquish *449 control of the stock and as a consequence there was no completed inter vivos gift. He points out that the stock was endorsed in blank by Mrs. Jenkins and physical possession was retained by him for business purposes. He stated he intended for his wife to receive the dividends produced by the stock during his lifetime, but in the event of his death he desired the stock to become her property. He does not protest the payment of the dividends, averaging $2400 annually, to the appellant.
We are concerned presently with the question of whether the transfer under the above circumstances constituted a valid gift inter vivos. In Greer v. Hampton, 240 So.2d 253 (Miss. 1970), we restated the general rule that clear and convincing evidence is required to establish a gift inter vivos. In McLean v. Green, 258 So.2d 247 (Miss. 1972), we delineated the requirements necessary to constitute a gift inter vivos. These were: A donor competent to make a gift, a voluntary act on his part with the intention to make a gift, the gift must be complete with nothing left to be done, the property must be delivered by the donor and accepted by the donee and the gift must be gratuitous and irrevocable. In Gilder v. First National Bank of Greenville, 214 So.2d 681 (Miss. 1968), we stated a gift inter vivos was perfected when the property proposed to be transferred was delivered in a manner so that all dominion over it was surrendered by the donor. From these authorities we conclude the lower court correctly determined that the transaction here was not a completed gift inter vivos. The facts relating to retained dominion and control of the stock were in dispute. The lower court resolved this factual issue in favor of the appellee. We cannot say, particularly in view of the clear and convincing evidence rule, that the court was manifestly wrong in this finding since it is supported by competent evidence. We therefore reject the appellant's argument on this assignment.
The appellant next contends that the trial court erred in not awarding lump-sum alimony in view of the appellee's present wealth, all of which was accumulated during their marriage. She cites Harrell v. Harrell, 231 So.2d 793 (Miss. 1970), wherein it was argued that the chancery court was without authority to decree lump-sum alimony in combination with future monthly payments. In rejecting this point we stated: "... [W]e are unable to discern any plausible reason why a lump-sum award if reasonable in amount as determined from the circumstances of the parties, would violate the terms of the statute even though made in conjunction with other alimony." (231 So.2d at 796). Harrell, as we view it, upholds and thus authorizes alimony in lump sum, either alone or in conjunction with other awards. It appears to us that a lump-sum award in conjunction with an award of monthly alimony would have been proper in this case. As heretofore stated, this couple was married for approximately twenty-four years. At the beginning of the marriage they had no assets and the husband made a salary of $85 per week. At the time of the divorce the appellee admitted assets of $800,000. The appellant's worth was meager by comparison. It seems to us in a case such as this where the wife has contributed to the accumulation of the property of her husband, doing her part as a housewife, it would not be improper that she be allowed a reasonable amount as lump-sum alimony on retrial.
The next assignment of error is addressed to the alleged inadequacy of $1000 per month for the appellant's support. As long ago as 1856 in the divorce case of Armstrong v. Armstrong, 32 Miss. 279, we stated with regard to support for the wife:
There appears to be no fixed rule upon this subject, but it depends upon the discretion of the court, to be exercised with reference to an equitable view of all the circumstances of the particular case, the only general rule being, that *450 the wife is entitled to a support corresponding to her rank and condition in life, and the estate of her husband. These principles are recognized by our statute, which provides, that the court may make such allowance "as from the circumstances of the parties and the nature of the case may be fit, equitable, and just." ... (32 Miss. at 290).
The court's authority to make all orders touching "equitable and just" maintenance or alimony for the wife in a divorce proceeding survives to the present. See Miss.Code 1942 Ann. § 2743 (1956), and the numerous cases annotated thereto.
In Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955), we set forth with some particularity the criteria to be considered by the court in making the award. See also Bunkley & Morse's Divorce and Separation in Mississippi, § 6.08 (1957). The standards announced in Brabham for consideration are: (1) The health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has the free use of the home, furnishings and automobile, and (9), such other facts and circumstances bearing on the subject that might be shown by the evidence.
In considering these rules in conjunction with the facts of this record we conclude that $1000 per month for the support of the appellant was not equitable and just since it was insufficient to maintain her in accord with her station and condition in life and in harmony with the estate of her husband. Armstrong, supra. In arriving at this conclusion we notice the periodic payments are subject to be terminated by the death of the appellee, leaving her with no security in that event. The insurance policy upon the life of the appellee referred to by the trial court with the appellant being one of the beneficiaries, is subject to termination by the company which the appellee controls. Moreover, the monthly award was insufficient to support the wife with basic necessities and to maintain the home and its environs as existed prior to the divorce. We conclude the award was grossly inadequate and are of the opinion the lower court erred in not making a greater award so that the wife might be supported in accord with her station in life as well as provided security for the future. In our opinion this requires the cause to be reversed so that equitable and just alimony touching the situation of the parties might be adjudicated.
It is finally contended that the lower court erred in awarding only $4500 as attorneys' fees. We neither affirm nor reject the award since the trial court permitted no evidence to be introduced relating to the value of the attorney's services. Since the case is reversed on other grounds, we conclude, on rehearing, that testimony be considered directed to the worth of the attorneys' services so that the lower court, as well as this Court, might have some standard in evaluating the fee.
We direct, however, that when the trial fee for the attorneys is determined, that it be supplemented by one-half of that amount for services in this Court on appeal.
Reversed and remanded.
GILLESPIE, C.J., and INZER, ROBERTSON and WALKER, JJ., concur.