459 So.2d 802 (1984)
Hazel D. ABSHIRE
v.
Weston J. ABSHIRE.
No. 54441.
Supreme Court of Mississippi.
November 14, 1984.
*803 Frank G. Power, McGee & Bogen, Leland, for appellant.
Stephen L. Thomas, Mansour & Thomas, Greenville, for appellee.
Before WALKER and ROY NOBLE LEE, P.JJ., PRATHER, J., and SUGG, Retired Supreme Court Justice.
SUGG, Retired Supreme Court Justice, for the Court:[1]
Hazel Abshire sued her husband, Weston J. Abshire, for divorce on the ground of adultery. Mrs. Abshire prayed for a reasonable amount of lump sum alimony, a reasonable amount as permanent alimony, an adjudication and determination of her interest in certain property held by the parties, and a reasonable amount for attorney fees.
In addition to a divorce the Chancery Court of Washington County granted Mrs. Abshire periodic monthly alimony payments of $750.00; lump sum alimony in the amount of $200,000.00, with payment deferred for five (5) years and payable thereafter in yearly installments of $5,000.00 without interest on the deferred installments; and suit fees in the amount of $12,000.00.
On appeal, Mrs. Abshire contends the trial court committed reversible error by deferring the payment of the Two Hundred Thousand Dollars ($200,000.00) lump sum alimony for a period of five (5) years and by ordering payment at the rate of Five Thousand Dollars ($5,000.00) per year without interest.
The parties were married on April 17, 1949, in Kaplan, Louisiana. In 1957 they moved with their two daughters to Greenville, Mississippi, where they purchased a house with title in both their names. In 1959 Abshire purchased a 240 acre farm known as the "Tamburo Place". With the proceeds from the sale of the parties' house and from an FHA loan, Abshire built a house on the Tamburo Place and the family, which now included a third daughter, moved into it in 1962 or 1963. Between that time and Mrs. Abshire's award of separate maintenance on May 10, 1967, Abshire purchased in his own name five separate tracts of land totaling 910.671 acres for an aggregate consideration of $229,000.00. Down payments on these purchases were made from the parties' joint bank account.
It is undisputed that Abshire's adultery caused the separation of the parties in 1967. On May 10th of that year, the Chancery Court of Washington County awarded Mrs. Abshire separate maintenance and the possession of the marital residence. She and the children lived there until 1969, when Abshire's conduct with his paramour became too disturbing and led Mrs. Abshire and her daughters, aged 18, 17, and 8, to move back to Kaplan, Louisiana, to the home of Mrs. Abshire's parents. Shortly thereafter the two elder daughters returned to Mississippi to attend college, *804 while the youngest child remained in Kaplan.
Abshire and his paramour applied for a marriage license in Arkansas in 1971. Although they were never married, Abshire adopted her child. The affidavit attached to the petition for adoption stated that Abshire and his paramour were husband and wife.
With the help of her father Mrs. Abshire bought a lot and borrowed $16,000.00 to build a small 2-bedroom house. The balance due on the loan at the time of trial was about $11,000.00. From 1970 to 1974 Mrs. Abshire worked at a TG & Y store. She later became a secretary at the Rost Middle School with a take home pay of $540.00 and separate maintenance of $300.00. Intermittently since 1968 she has been under the care of a psychiatrist and is presently being treated for hyperthyroid, hypertension and anxiety. When asked to compare her present standard of living with that to which she was accustomed during her marriage, Mrs. Abshire testified:
A. First of all, I have to work now where I didn't at the time. I have to watch expenses pretty carefully. I don't have any left over for  except for necessities. I had a maid and we would take vacations, and I don't now  just to come see my children.
The only issue presented on this appeal is whether the chancellor abused his discretion in deferring the payment of the $200,000.00 lump sum alimony award for a period of five years and ordering payment in annual installments of $5,000.00 without interest.
Mrs. Abshire argues that in view of her age (53 at time of trial) and health, this payment scheme was manifest error. She submits that, unless Mr. Abshire predeceases her, she will not receive the full amount of the lump sum alimony award until she is 98 years old.
The rationale behind the payment scheme was to prevent oppressive liquidation of Abshire's assets. We first observe the chancellor found Abshire had "a net worth now that is in the range of $2,000,000.00." His assets consist of land, stocks, certificates of deposit, and notes receivable. The chancellor's finding as to Abshire's net worth is conservative.
The record also reveals Abshire was able to make hundreds of thousands of dollars in improvements to his property without borrowing money.
In Jenkins v. Jenkins, 278 So.2d 446, 449, 450 (Miss. 1973), this Court held that an award of lump sum alimony was proper to provide security for the future in addition to periodic alimony payable monthly. In Jenkins, the court stated:
The appellant next contends that the trial court erred in not awarding lump-sum alimony in view of the appellee's present wealth, all of which was accumulated during their marriage. She cites Harrell v. Harrell, 231 So.2d 793 (Miss. 1970), wherein it was argued that the chancery court was without authority to decree lump-sum alimony in combination with future monthly payments. In rejecting this point we stated: "... [W]e are unable to discern any plausible reason why a lump-sum award if reasonable in amount as determined from the circumstances of the parties, would violate the terms of the statute even though made in conjunction with other alimony." (231 So.2d at 796). Harrell, as we view it, upholds and thus authorizes alimony in lump sum, either alone or in conjunction with other awards. It appears to us that a lump-sum award in conjunction with an award of monthly alimony would have been proper in this case. As heretofore stated, this couple was married for approximately twenty-four years. At the beginning of the marriage they had no assets and the husband made a salary of $85 per week. At the time of the divorce the appellee admitted assets of $800,000. The appellant's worth was meager by comparison. It seems to us in a case such as this where the wife has contributed to the accumulation of the property of her husband, doing her part as a housewife, it would not be improper *805 that she be allowed a reasonable amount as lump-sum alimony on retrial.
* * * * * *
... We conclude the award was grossly inadequate and are of the opinion the lower court erred in not making a greater award so that the wife might be supported in accord with her station in life as well as provided security for the future... .
Abshire does not contend the amount of the monthly alimony or the lump sum alimony is unreasonable. When the parties were married they had very few assets, and the bulk of the land owned now by Abshire was acquired before their separation. In this case, as in Jenkins, a lump sum award together with monthly alimony was proper. However, the chancellor deferred payment of the lump sum alimony to keep from putting Abshire "into a situation that would require liquidation of the business or the sale of the farm, or other major structural problems in the financial assets." The chancellor stated that he was providing Mrs. Abshire with lump sum alimony as "simply something that's out there protecting you in the event of your husband's death." Payment of the lump sum award within a reasonable time should have been ordered by the chancellor.
We note from the record that Abshire had a carry over of his crop and certificates of deposit in an amount sufficient to pay the $200,000.00 lump sum alimony without requiring liquidation of his business or sale of his farm. We hold the chancellor erred by deferring payment of the lump sum award for an unreasonable length of time.
Accordingly, we direct that the lump sum alimony be paid within 18 months, that interest on the lump sum alimony from the date of the original decree be paid within 30 days, and that interest accrue thereafter on the lump sum alimony until paid by Abshire at the statutory rate of 8%.
We allow a $6,000.00 attorneys fee for representation on appeal to be paid by Abshire within 30 days from the date this decision is handed down.
REVERSED AND RENDERED.
WALKER and ROY NOBLE LEE, P.JJ., BOWLING, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., and DAN M. LEE, J., not participating.
NOTES
[1] Sitting pursuant to Mississippi Code Annotated, Section 9-3-6 (Supp. 1982). The above opinion is adopted as the opinion of the Court.