494 So.2d 362 (1986)
Emogene M. TUTOR
v.
Forrest T. TUTOR.
No. 55831.
Supreme Court of Mississippi.
September 17, 1986.
Lester F. Sumners, Darden, Sumners, Carter, Trout & McMillin, New Albany, for appellant.
Forrest T. Tutor, M.D., pro se.
Before WALKER, C.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
From a decision of the Chancery Court of Lee County, Mississippi, granting Emogene M. Tutor lump sum alimony of $50,000.00 and $2,500.00 per month periodic alimony, she appeals, assigning as error:
I. ON THE UNCONTROVERTED FACTS THE AWARD OF ALIMONY WAS INADEQUATE AND AN ABUSE OF THE CHANCELLOR's DISCRETION.
There is a cross-appeal by Forrest T. Tutor, pro se, in which he alleges:
I. THAT HIS COIN COLLECTION WAS UNLAWFULLY TAKEN BY EMOGENE TUTOR AND SHOULD BE RETURNED BY ORDER OF THE COURT; and
II. THAT AS HE IS 57 YEARS OLD THERE SHOULD BE A TIME LIMIT PLACED ON THE PERIODIC ALIMONY OF NO MORE THAN TEN YEARS AND SOME PROVISION SHOULD BE MADE FOR DISABILITY OR DECREASE OF INCOME TO HIM DURING THESE TEN YEARS.
We deal first with the cross-appeal. Forrest Tutor actually failed to file a cross-appeal *363 in this case as to these two assignments of error, nor did he cite any authority nor base his argument on the record. "Where assignments of error are unsupported by argument and authority, the court does not as a general rule consider them." Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979).
Although the issues were not properly before us, we will address them. The record shows that Emogene Tutor had the coin collection at the time of the divorce and at no time did Forrest Tutor move to have her produce it. Furthermore, the evidence establishes that Mrs. Tutor assisted Forrest Tutor in acquiring and maintaining the collection and that the family may have made sacrifices in order to allow Forrest Tutor to form the collection. This testimony is uncontroverted by Dr. Tutor. No authority has been cited to support the return of the coin collection and we find this assignment by Forrest Tutor to be without merit.
As to the assignment that a time limit should be fixed to the periodic monthly alimony payments, Forrest Tutor proposes that due to his age (57) he will soon be able to retire, and that upon retirement the monthly alimony payments should be terminated. No law is cited to support this contention and we have found no law to support it. Furthermore, this record clearly indicates that Forrest Tutor has more than sufficient net worth and investment returns so that he should be able to continue making the periodic monthly alimony payments without suffering any hardship whatsoever. Forrest Tutor himself acknowledges that the periodic monthly alimony payments awarded by the chancellor in the court below were equitable. There is no merit to this assignment by Forrest Tutor.
Emogene Tutor is 59 years of age and Forrest Tutor is 57 and they were married on May 5, 1945. When they married Forrest Tutor was a high school student and Emogene Tutor was a school teacher teaching the sixth grade. It was uncontroverted that throughout their married life Emogene Tutor worked and provided income for herself and her family and contributed to the financial status of Forrest Tutor and the family.
Mrs. Tutor's tax returns show an adjusted gross income for the years 1981, 1982, and 1983 of $22,146.00, $22,540.00, and $22,291.00 respectively. She also has possession of the valuable coin collection left at the house by Forrest Tutor. Forrest Tutor is substantially well off. In fact, he loaned $80,000.00 to a physician, $50,000.00 to another physician and has a note from another person with an outstanding balance of $48,000.00. While Emogene Tutor has a life insurance policy with a $20,000.00 face value, Forrest Tutor has life insurance policies with a total face value of $133,000.00 and a $30,000.00 cash value. At the time of the divorce he owned 1,915 shares of Bank of Mississippi stock which at that time was trading for $32.00 a share. He also owned a considerable number of shares of First Citizens National Bank stock, 729 shares of Dreyfus Leverage, 102 shares of City Investment Company, 132 shares of McDonald Douglas, 21 shares of Clairmont Capital and 101 shares of Occidental Petroleum.
Forrest Tutor had a fully vested profit sharing plan with a balance of $275,619.00, a fully vested pension plan with a current balance of $162,958.00 and $2,095.00 in an IRA. Tutor also has an interest in a partnership called 78 Venture. Tutor owns 17 1/2 acres in Haven Acres Subdivision, a half interest ($75,000.00) in his medical building and he fully owns Forrest Tutor Professional Association, as well as approximately 100 acres of crop land at Lochinvar and 25 acres at Randolph that are leased out. At the time of the divorce Forrest Tutor had four bank accounts, two at First Citizens National Bank with a total balance of $132,153.09 and two at Tombigbee Bank & Trust with a total balance of $162,865.70.
Tutor's tax returns for 1980, 1981, 1982, and 1983 showed adjusted gross income after deduction of alimony and IRA of $105,245.00, $206,782.00, $220,104.00, and $285,385.00 respectively.
*364 At the time of the divorce the total assets of Forrest Tutor ranged in value between $900,000.00 and $1,488,435.00.
Forrest Tutor has no substantial debts but does, however, have pending against him a medical malpractice suit in which the demand is $500,000.00.
We have long recognized that there are certain elements which are to be considered by the chancellor in fixing alimony amounts. These elements are clearly set forth in the case of Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955), in which we stated:
The lower court should award reasonable sums for alimony ... in light of conditions as they now prevail, including (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has free use of the home furnishings and automobile; and (9) such other facts and circumstances bearing on the subject that might be shown on the evidence.
Id. 84 So.2d at 153.
Nothing in the record indicates that the chancellor below did not consider these elements set forth in Brabham, however, we will review them. As regarding elements 1, 2, and 3, Forrest Tutor is 57 years old and is in excellent health for a man of his age. He is a board certified neurosurgeon whose income at the time of the divorce was almost $300,000.00 a year. Emogene Tutor is 59 years old with no evidence of any significant health problems. She has completed two years of college and has no special skills. She has work experience as a sales clerk and some clerical (non-typing) training. Excluding alimony she earns approximately $11,000.00 a year which is approximately 3.6 percent of the income of Forrest Tutor. As to element no. 4, the reasonable needs of the wife, we stated the general rule in Jenkins v. Jenkins, 278 So.2d 446 (Miss. 1973), and that rule is "The wife is entitled to support corresponding to her rank and condition in life, and the estate of her husband." Id. at 449-450. As to element No. 6, Forrest Tutor at trial stated he considered his reasonable financial needs to be $24,000.00 a year and he thought that amount would be reasonable for Emogene Tutor as well.
The facts of Armstrong v. Armstrong, 32 Miss. 278 (1856), are very similar to the facts in this case. As the divorce itself is not appealed and was not contradicted by Forrest Tutor, we will not review in depth the facts therein. However, they are sufficiently similar to Amstrong, supra, and we did not find it shocking that the Amstrong court would consider the allowance of one-third of the value of the husband's estate as fit, equitable, and just as alimony to the wife.
In Jenkins, supra, we pointed out that a lump sum alimony award plus monthly alimony is proper where the wife had contributed to the accumulation of the property of her husband. That is certainly the case here.
As to what amount of lump sum should be awarded Emogene Tutor, the case of Schilling v. Schilling, 452 So.2d 834 (Miss. 1984), is very helpful in that the facts of that case are closely aligned with the facts of this case. The wife in Schilling also had no substantial assets of her own and had quit her own job to aid her husband in pursuit of his professional aspirations. The chancellor in Schilling reasoned that Mrs. Schilling had made a "very substantial contribution to the financial position of [her husband] and awarded lump sum alimony in the amount of $240,000.00." Schilling at 835. On appeal this Court found that this award by the chancellor was not an abuse of his discretion and did not present a likelihood of oppressive liquidation of assets by Mr. Schilling whose net worth was determined to be at least $750,000.00. Forrest Tutor's net worth is well in excess of $900,000.00.
*365 In Reeves v. Reeves, 410 So.2d 1300 (Miss. 1982), we held that a lump sum alimony award of $100,000.00 or ten percent (10%) of the husband's net worth would not be unreasonable.
Finally, in Clark v. Clark, 293 So.2d 447 (Miss. 1974), we held that where the wife has made contributions to the accumulation of the husband's assets, she is entitled to some share of those assets.
In Gresham v. Gresham, 198 Miss. 43, 48, 21 So.2d 414, 416 (1945), we said:
This Court has the power to affirm, reverse, or modify the decree appealed from, or it may reverse in part and affirm in part, or remand for a new hearing, and where all the facts necessary to enable it to do justice are contained in the record, it may make such order with respect to alimony or allowances as the trial court should have made. 27 C.J.S., Divorce, p. 1111, § 289. The essential facts are in the record. There would seem no need to remand the cause.
We find ourselves in this case in the same position as the court found itself in Gresham. We think the award of periodic monthly alimony of $2,500.00 was not an abuse of discretion and it is affirmed.
However, the lump sum award of alimony of $50,000.00 was so inadequate as to constitute an abuse of discretion and appellee should and will be required to pay to the appellant as lump sum alimony the sum of $150,000.00.
The allowance by the chancellor to the appellant of $4,536.00 for the services of her attorney in that court was a fair and just allowance and that action is affirmed.
Appellant is further awarded here the sum of $2,768.00 to be paid by the appellee to the appellant for the services of her attorney in this Court.
All costs of this proceeding are assessed against the appellee.
AFFIRMED IN PART; REVERSED IN PART AND JUDGMENT ENTERED HERE.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., dissents.